IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

**RODELL AVERY, JR.**                                                                             **PETITIONER**

VS.                                               **CASE NO. 5:06CV00242 WRW/HDY**

**LARRY NORRIS, Director of the**
**Arkansas Department of Correction**                                     **RESPONDENT**

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Court Judge William R. Wilson, Jr. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary

hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

>Clerk, United States District Court
>Eastern District of Arkansas
>600 West Capitol Avenue, Suite 402
>Little Rock, AR 72201-3325

## DISPOSITION

Now before the Court is the application for writ of habeas corpus pursuant to 28 U.S.C. §2254 of Rodell Avery, Jr., an inmate in the custody of the Arkansas Department of Correction (ADC) as a result of his convictions following a 2003 jury trial in Calhoun County Circuit Court on the charges of aggravated robbery, multiple counts of kidnapping, and escape. Petitioner was sentenced to forty years of imprisonment. Following the 2003 trial, petitioner's attorney filed a motion to dismiss the escape charge for lack of jurisdiction and a Rule 37 petition to vacate the judgment for kidnapping and aggravated robbery due to a conflict of interest. Following a hearing on October 27, 2003, the trial court denied both motions. In October of 2003 the petitioner filed a *pro se* notice of appeal and in November of 2003 the petitioner's attorney filed a notice of appeal. However, the judgment in the criminal case was dated September 16, 2003, and both of the attempts to appeal were untimely. The Supreme Court of Arkansas considered the appeal as one from the post trial motions and, when counsel failed to file a timely brief, the appeal was dismissed. *Avery v. State*, 360 Ark. 595 (2005). Counsel for the petitioner then moved for a belated appeal, and the Arkansas Supreme Court granted the motion. *Avery v. State*, 361 Ark. 352 (2005). On direct appeal Mr. Avery raised four claims for relief.[1] The appeal was unsuccessful. *Avery v. State*, 93 Ark. App.

---

[1] He argued: (1) the evidence was insufficient to establish kidnapping because the state failed to prove the restraint exceeded that which was incidental to the robbery; (2) the trial court erred in denying his motion for an independent mental evaluation and in denying his request for a competency hearing; (3) the evidence was insufficient to establish jurisdiction for the escape charge; and (4) the prosecuting attorneys should have been disqualified because they both had represented Avery before they became prosecutors.

112 (2005). The petitioner states that he subsequently sought postconviction relief pursuant to A.R.Cr.P. 37, submitting a January 2006 petition. The trial court denied relief in August of 2006, finding the petition was an improper second Rule 37 petition. The petitioner did not appeal from this ruling.

In the petition now before the Court, the following grounds for relief are advanced:

> 1.  Counsel rendered constitutionally ineffective assistance of counsel because he:
> (a) filed a Rule 37 petition without Avery's knowledge and participation, which resulted in the dismissal of Avery's subsequent Rule 37 petition,
> (b) was inadequately prepared for Avery's case, which resulted in his (i) failure to lodge a pre-trial challenge to the escape charge for lack of jurisdiction and (ii) failure to abstract the directed verdict motion and to present on appeal the same argument made in the directed verdict motion at trial,
> (c) failed to secure an independent mental health evaluation, provided evidence of petitioner's lack of fitness to proceed, and to argue that the two competency hearings were inadequate to satisfy his right to a competency hearing, and
> (d) failed to present mitigating evidence of petitioner's past psychological diagnoses, history, and drug addictions;
> 2.  The evidence was insufficient to establish kidnapping because the state failed to prove that the restraint used during the commission of the crimes exceeded that which was merely incidental to the aggravated robberies;
> 3.  The circuit court lacked jurisdiction over the escape conviction because the escape did not physically occur in Calhoun County, where the petitioner was tried; and
> 4.  The trial court erred in denying his motion for an independent mental evaluation and in denying his request for a competency hearing.

The respondent contends that grounds one and two are not properly before this Court due to the petitioner's failure to adequately raise the grounds in state court, as required by *Wainwright v. Sykes*, 433 U.S. 72 (1977), and its progeny[2]. Typically, the Court would analyze whether these grounds are procedurally barred. However, in this case we find the better course is to address these claims. In opting to proceed in this fashion, we are guided by the following language of the Eighth Circuit Court of Appeals:

> In cases such as this, it might well be easier and more efficient to reach the merits than to go through the studied process required by the procedural default doctrine. Recent commentary points up the problems with the cause and prejudice

---

[2] The respondent contends that grounds three and four should be dismissed because neither ground presents a federal question.

standard:
> [T]he decision tree for habeas review of defaulted claims is intricate and costly. . . . In essence, *Sykes* and *Strickland* require habeas lawyers and federal judges and magistrates to work through the equivalent of a law school exam every time a defendant tries to escape procedural default.

*McKinnon v. Lockhart*, 921 F.2d 830, 833 n.7 (8th Cir. 1990) (quoting Jeffries & Stuntz, *Ineffective Assistance and Procedural Default in Federal Habeas Corpus*, 57 U.Chi.L.Rev. 679, 690 (1990)).

There are many allegations of ineffective assistance of counsel, all of which require the petitioner to prove that (l) his attorney's actions were unreasonable when viewed in the totality of the circumstances; and (2) he was prejudiced because there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 688 (l983); *Ryder v. Morris*, 752 F.2d 327, 33l (8th Cir. l985). The petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *Kellogg v. Scurr*, 74l F.2d l099, ll0l (8th Cir. l984); *Bell v. Lockhart*, 74l F.2d ll05, ll06 (8th Cir. l984). This presumption is created to "eliminate the distorting effects of hindsight," and recognizes that "it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689; *Ryder*, 752 F.2d at 33l. In analyzing the claims of ineffective assistance we will first consider whether the petitioner establishes the first prong of the *Strickland* test – did his trial attorney act unreasonably in light of the totality of the circumstances? After addressing all of the allegations of unreasonable attorney behavior, we will then address whether the petitioner was prejudiced by the attorney's acts or omissions.

Mr. Avery first contends his trial attorney was ineffective for filing a Rule 37 petition without Avery's knowledge and participation. We assume for the purpose of this Order that Avery did not know about or participate in the Rule 37 petition filed by his trial attorney, Mr. Alvin Clay. The timing of the events following the trial was unusual. Following the jury verdict on September 16, 2003, Avery's attorney filed an October 14, 2003, motion to dismiss the escape charge and a motion

to reverse and vacate the convictions due to an alleged conflict of interest on the part of one of the prosecutors. The latter motion specifically recited that it was filed "pursuant to Arkansas Rule Criminal Procedure Rule 37." (Tr. 106-113). The trial judge had informed petitioner and counsel on the record that a notice of appeal was to be filed within thirty days of the judgment. (Tr. 493). The trial attorney filed the untimely notice of appeal on November 20, 2003. The petitioner would later win the right to file a belated direct appeal. After the direct appeal, Mr. Avery sought to pursue Rule 37 relief, at which time his petition was denied because he had already sought Rule 37 relief in the pleading filed by his attorney in October of 2003. Again, if we assume this petition was filed without Mr. Avery's knowledge, it follows that such a course of action was unreasonable on the part of the trial attorney. It is unclear why an attorney would file a Rule 37 petition and not file a notice of appeal during the thirty day period following the judgment in a criminal case.

Mr. Avery next complains that Mr. Clay was inadequately prepared for the trial in two specific instances: one, failing to lodge a pre-trial challenge to the escape charge for lack of jurisdiction; and two, failing to abstract the directed verdict motion and to present on appeal the same argument made in the directed verdict motion at trial.

After the trial, Mr. Clay filed a motion to dismiss the escape charge. In this motion, he argued that the trial court was without jurisdiction because the escape occurred in Dallas County, rather than in Calhoun County where the petitioner was charged and tried. From the record, there appears to be no reason why this motion could not have been filed prior to the trial. No tactical advantage seems to have been gained by waiting until Mr. Avery stood convicted of the charge. In addition, about three weeks before the trial the judge specifically inquired of Mr. Clay about this issue. (Tr. 25-26). Under these circumstances, we find it unreasonable that trial counsel did not seek dismissal prior to the trial of the charge of escape.

The petitioner also contends that Mr. Clay failed to abstract the directed verdict motion and present the same argument made in the directed verdict motion at trial. At the close of the state's case, Mr. Clay made the following motion with regard to the kidnapping charges:

> Judge, as it relates to kidnaping, they have to show restraint, and for the purpose of causing physical injury. There has been no, no testimony as it relates to any type of physical injury.

(Tr. 417). The trial judge denied the motion for directed verdict, noting that the restraint did not require physical injury, but the restraint was in connection with the commission of a felony. (Tr. 417). On direct appeal, the petitioner argued that the state failed to demonstrate that any force was used beyond the force necessary to commit the offense of aggravated robbery. The Arkansas Court of Appeals dismissed this argument and affirmed the kidnapping convictions because the ground raised on direct appeal was not the challenge raised at trial. *Avery v. State*, 93 Ark. App. 112 (2005). The petitioner's specific arguments are that his attorney failed to abstract the directed verdict motion and failed to raise the same claim on direct appeal as raised at trial. In a footnote, the Arkansas Court of Appeals confirms that Mr. Clay failed to abstract his motions for a directed verdict but that the State did so in its supplemental abstract. In order to challenge the sufficiency of the evidence to support the kidnapping convictions, it was essential that counsel abstract the directed verdict motion and that he raise on appeal the same argument advanced in the motion for directed verdict. It was unreasonable behavior on the part of the attorney to fail to do either of these tasks.

Petitioner next asserts his counsel erred with regard to securing an independent mental health evaluation and presenting a defense based upon Avery's lack of fitness to proceed. Prior to retaining Mr. Clay as his attorney, Mr. Avery was represented by a public defender who moved for and obtained a mental examination. (Tr. 18). This examination was done by Dr. William C. Peel at the South Arkansas Regional Health Center. Dr. Peel concluded Mr. Avery was not "suffering from a mental defect or impairment that keeps him from knowing right or wrong of from conforming his behavior to the rules of society should he choose to do so." (Tr. 49). After Mr. Clay became the petitioner's attorney, he asked the judge for a continuance to allow for an additional mental examination. This motion was made orally at a June 21, 2003, hearing. The trial judge noted that Mr. Avery had already received an evaluation, and Mr. Clay persisted that another mental examination was desired. The trial judge noted the upcoming trial date of August 14, and also

instructed Mr. Clay to make any requests in writing. (T. 8-10). On July 7, a written motion was filed requesting a mental evaluation. On September 5, the trial judge ruled as follows:

> A mental evaluation was performed on the defendant in February, 2003, at the request of the defendant. A hearing to determine fitness to proceed was held on August 21, 2003. Defendant presented no evidence to cast doubt upon his fitness to proceed. Based upon the evaluation, the Court finds the defendant fit to proceed.
> The parties are instructed the case will proceed to trial as scheduled on September 15-16, 2003.

(Tr. 66).

Although the petitioner's attorney apparently intended to obtain an independent mental examination, we do not find it unreasonable behavior on his part in failing to do so. The record does not suggest that the initial mental examination was deficient in any way, nor is there any evidence that the circumstances had changed and a subsequent examination would have yielded a different conclusion. Even though Mr. Clay seemed determined to obtain a second mental examination and did not do so, we cannot say that this inaction was unreasonable under the circumstances. Likewise, we find no fault with petitioner's attorney in his efforts to show his client unfit to proceed or entitled to an additional competency hearing. The mental examination that had been performed on the petitioner could not be overcome, and Mr. Clay argued unsuccessfully against the conclusions of Dr. Peel. We find the trial attorney was not unreasonable in this regard.

Finally, the petitioner faults Mr. Clay for failing to present mitigating evidence of Avery's past psychological diagnoses, history, and drug addictions. At the sentencing phase of the trial, Mr. Clay called Linda Avery, the petitioner's mother, as his lone witness. (Tr. 469-79). Ms. Avery testified that her son had mental problems beginning at age five. As a result, the petitioner had received treatment through the years, including Ritalin and other medications. She indicated her son was diagnosed as a paranoid schizophrenic at age 19, and had been committed to a mental institution shortly thereafter. She also testified that her son had a history of destructive behavior, including an attempted suicide. Mr. Avery's mother asked for mercy in her son's sentencing. While Mr. Clay could have offered more testimony concerning the petitioner's troubled history, the testimony of Mr. Avery's mother addressed, at least to a degree, the issues of which the petitioner now complains.

7

Under the circumstances, we cannot find it was unreasonable behavior on the part of Mr. Clay to offer only the mother as a witness in the sentencing phase of the trial. While Mr. Avery himself would have first hand knowledge of his history, it may well have been a strategic move to call his mother, a more sympathetic witness, to the stand. This is particularly true in this case, as the jurors were informed at the outset of the sentencing phase that Mr. Avery had four prior felony convictions. (Tr. 463). In summary, we do not find fault with the attorney's action taken on behalf of Mr. Avery during the sentencing phase of the trial.

Having addressed the allegations of Mr. Avery concerning his attorney's acts and omissions, and having found some of the attorney's behavior to be unreasonable, we now consider the second prong of the *Strickland* test – is there a reasonable probability that, but for the errors of counsel, the outcome of the trial would have been different. From a thorough review of the trial transcript and the record before the Court, we conclude that the instances of unreasonable attorney behavior did not prejudice the petitioner. The outcome of the trial would not have been different had the attorney acted in accord with the petitioner's desires expressed in this habeas corpus petition. This conclusion rests upon the overwhelming evidence supporting the petitioner's guilt. The Arkansas Court of Appeals ably addressed the facts and issues on direct appeal:

> Rodell Avery, Jr., appeals from his convictions for one count of aggravated robbery, three counts of kidnapping, and one count of second-degree escape. He argues that the evidence is not sufficient to support his conviction for kidnapping, that the trial court erred in denying his motions to have an independent mental evaluation and to hold a competency hearing, that the circuit court lacked jurisdiction to try him for the escape charge, and that the trial court erred in refusing to set aside his convictions even though two of the prosecutors had previously represented him. We affirm on each point.
>
> Appellant was charged with aggravated robbery and kidnapping in connection with events that the State alleged took place on April 17, 2002, in Thornton, Arkansas, which is in Calhoun County. On that date, two men forced Robert and Margaret Rosenbaum and their toddler granddaughter into the Rosenbaums' home and robbed them at gunpoint; also present was the Rosenbaums' two-month old grandson. Mrs. Rosenbaum identified appellant from a photographic line-up; he was apprehended later that same day near Fordyce in Dallas County. Appellant escaped in Dallas County while being escorted back to Calhoun County by Calhoun County officers. He was apprehended nearly four months later and was charged with second-degree escape.

Prior to trial, appellant requested and received a mental evaluation; the evaluation indicated that he was fit to stand trial. Appellant thereafter filed a motion for an independent mental evaluation, but failed to obtain one. After two hearings during which he presented no evidence regarding his mental status, appellant requested a competency hearing. That request was denied by the trial court because appellant had been declared fit to proceed and because he failed to obtain an independent mental evaluation.

Appellant received a jury trial and was convicted of all charges. He was sentenced to serve 360 months for the aggravated robbery and kidnapping charges, and to serve a consecutive term of 120 months for the escape charge.

1.*I. Kidnapping*

Appellant's first argument is that the trial court erred in denying his motion for a directed verdict on the kidnapping charge. We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence. *Jordan v. State,* 356 Ark. 248, 147 S.W.3d 691 (2004). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.*

Appellant was charged with kidnapping under Ark.Code Ann. § 5-11-102(a)(3) (Repl.1997), which provides that a person commits kidnapping if, without consent, he restrains another person so as to interfere substantially with his liberty with the purpose of facilitating the commission of any felony or flight thereafter. Appellant argues that the State's evidence regarding the kidnapping was insufficient because the State failed to demonstrate that any force was used beyond that force necessary to commit the offense of aggravated robbery. It is true that a defendant may be prosecuted for kidnapping only when the restraint used exceeds the restraint that is normally incidental to the crimes of rape or robbery. *Moore v. State,* 355 Ark. 657, 144 S.W.3d 260 (2004). However, we summarily affirm appellant's kidnapping convictions without reaching the merits of his argument because he is attempting to change the grounds for his argument on appeal.

At the conclusion of the State's case-in-chief, appellant's counsel made the following motion:

Judge, as it related to kidnapping, they have to show restraint, and for the purpose of causing physical injury. There as been no, no testimony as it relates to any kind of physical injury.

The trial court denied this motion. [footnote omitted]. At the close of all of the evidence, appellant's counsel stated, "we renew all of the motions including the directed verdict and all of the prior motions that have been made in this case." The trial court again denied appellant's motion.

Thus, it is clear that appellant did not raise a challenge below to the State's proof regarding whether the physical restraint imposed exceeded that necessary to

commit aggravated robbery-he solely challenged whether the restraint was for the purpose of causing physical injury. [footnote omitted] A party cannot change the grounds for a directed-verdict motion on appeal, but is bound by the scope and nature of the argument presented at trial. *Marbley v. State,* 81 Ark.App. 165, 100 S.W.3d 148 (2003) (refusing to address an argument that the degree of restraint used during a kidnapping did not exceed the force necessary to commit rape, where that argument was not the basis for the defendant's directed-verdict motion). Accordingly, we affirm appellant's kidnapping convictions.

*II. Mental Evaluation*

Appellant's next argument is that the trial court erred in denying his motion for an independent mental evaluation and in denying his request to hold a mental competency hearing. Appellant argues that he had the right to be examined by an examiner of his own choosing and that the trial court was required to hold a competency hearing because he challenged the court-ordered mental evaluation report. *Greene v. State,* 335 Ark. 1, 977 S.W.2d 192 (1988). We hold that the trial court did not err because appellant was not entitled to a second court-ordered mental evaluation and because he, in fact, received a competency hearing.

If a defendant files notice that he or she intends to rely on the defense of mental disease or defect the trial court is required to stay criminal proceedings and to order a mental examination. Ark.Code Ann. § 5-2-305(a)(1)(A) and (b)(1) (Supp.2005). Further, when a defendant wishes to be examined by a doctor of his own choice, that doctor shall be permitted to have reasonable access to the defendant for the purposes of examination. Ark.Code Ann. § 5-2-306 (Repl.1997). Additionally, Ark.Code Ann. § 5-2-309 (Repl.1997) provides:

(a) If the defendant's fitness to proceed becomes an issue, it shall be determined by the court.

(b) If neither party contests the finding of the report filed pursuant to 5-2-305, the court may make the determination on the basis of the report.

(c) If the finding is contested, the court shall hold a hearing on the issue.

On January 27, 2003, pursuant to § 5-2-305, appellant filed a motion for a mental examination at the Arkansas State Hospital. That same day, the trial court ordered the examination, which was ultimately conducted by Dr. William Peel. In his evaluation, filed on May 28, 2003, Dr. Peel concluded that appellant was able to conform his conduct to the requirements of the law at the time of the offense, that appellant understood the nature of the legal proceedings against him, and that he was competent to stand trial.

On July 7, 2003, pursuant to Ark.Code Ann. § 5-2-203, appellant filed a notice that he would raise the defense of mental disease or defect at his trial and also requested to have a mental evaluation performed by the examiner of his own choosing. At a hearing held on appellant's motion, on August 21, 2003, appellant's counsel informed the court that appellant had not been evaluated, due to

10

unspecified "logistical" and financial problems. [footnote omitted]. Counsel further stated that he had enlisted the assistance of two attorneys to make arrangements for an evaluation in Little Rock. Counsel stated that the evaluation would probably be scheduled within the next two weeks and that it would not affect the trial, which had been scheduled for September 15, 2003. Counsel emphasized that he was "not asking for a delay of the trial days." The trial court informed the parties that the trial was set for September 15 and that appellant was entitled to "whatever you can obtain."

In the absence of any independent evaluation obtained by appellant, on September 5, 2003, the court entered an order declaring appellant fit to proceed based on Dr. Peel's evaluation, and again notified the parties that the trial would proceed on September 15. Another hearing was set for September 11, 2003. On that same day (September 5), appellant filed a motion requesting a second evaluation under § 5-2-305 and expressly requesting a competency hearing. During the hearing, the trial judge noted that appellant had done nothing since the August 21 hearing to obtain an independent evaluation and informed the parties that the trial would proceed as planned based on Dr. Peel's evaluation. In a motion for a competency hearing filed on September 12, 2003, three days prior to trial, appellant for the first time specifically contested the trial court's determination that he was fit to proceed.

On these facts, we hold, first, that the trial court did not err in denying appellant's request for a second evaluation. A defendant is not automatically entitled to a *second* evaluation simply because, after the first evaluation, he raises the defense of mental defect or mental incapacity or contests the first evaluation. Whether a second mental evaluation is necessary is within the trial court's discretion to determine. *Barnes v. State,* 346 Ark. 91, 55 S.W.3d 271 (2001); *Dirickson v. State,* 329 Ark. 572, 953 S.W.2d 55 (1997). Moreover, it is not an abuse of the trial court's discretion to deny a second examination to a defendant who fails to act diligently to secure the necessary information on which to establish the defense of mental disease or defect. *Dirickson, supra* (holding that a defendant who did not raise the issue of incompetency at the first opportunity and who waited over one month after receiving notice of the mental evaluation to request supporting documents was not entitled to a second mental evaluation).

Appellant here did not act with diligence to secure the information necessary to establish his defense of mental disease or defect, namely the independent evaluation. It is the defendant's burden to prove the existence of a mental disease or defect. *Dirickson, supra.* Even though appellant requested an independent mental evaluation by an examiner of his choice *two months prior to trial,* and despite reassurances to the trial court that the evaluation was forthcoming, appellant never obtained an independent evaluation and never presented evidence supporting that he was mentally incompetent. Therefore, the trial court did not err in determining that appellant was not entitled to a second court-ordered mental evaluation.

Nor did the trial court err in denying appellant's request for a competency hearing. Appellant is correct that the trial court was required under § 5-2-309(c) to hold a hearing when he contested the findings of the mental evaluation through his motions and his attorney's arguments. However, the case cited by appellant, *Greene, supra,* is inapposite because in that case, *no hearing* was held and thus, the defendant was denied any opportunity to raise his objections to the mental evaluation. By contrast here, the trial court conducted two hearings, one on

11

August 21 and one on September 11, during which appellant's attorney specifically asserted that appellant was mentally unfit to stand trial.

In short, appellant cannot demonstrate prejudice because he, in fact, was granted a competency hearing; the August 21 hearing (and possibly the September 11 hearing) served as his competency hearing. The August 21 hearing was held in response to appellant's notice of his intent to rely on the defense of mental disease or defect and his request for an independent mental examination. A letter sent by the case coordinator to appellant's attorney indicated that the August 21 hearing was being held "regarding the mental condition of the defendant." Thus, appellant was clearly on notice that his mental competency would be the subject of the August 21 hearing. However, he did not object to the hearing, did not request a continuance, and did not assert that his rights concerning a competency hearing were being violated in any way.

Moreover, during the August 21 hearing, appellant offered no proof that he suffered from a mental disease or defect, but focused on the fact that he had requested an independent mental evaluation, which he had not yet obtained. Thus, the only evidence that the court had before it during this hearing was Dr. Peel's report that appellant was mentally competent to proceed to trial. Accordingly, on September 5, 2003, the trial court entered an order declaring appellant fit to proceed. This order stated:

A mental evaluation was performed on the defendant in February 2003, at the request of the defendant. *A hearing to determine fitness to proceed was held on August 21, 2003.* Defendant presented no evidence to cast doubt on his fitness to proceed. Based upon the evaluation, the Court finds the defendant fit to proceed.

(Emphasis added.)

While appellant thereafter obtained a second hearing on September 11, during which he again failed to provide evidence of his unfitness to proceed, he never objected to the above order, and never objected that neither the August 21 nor September 11 hearing satisfied his right to a competency hearing. Appellant cites no authority requiring a trial court to conduct *subsequent* competency hearings once a competency hearing has been held, especially in the absence of any evidence indicating that a defendant has a mental disease or defect. On these facts, we cannot say the trial court erred in denying appellant's subsequent request for an additional competency hearing.

### III. Escape

In a post-trial motion to dismiss, appellant asserted that the Calhoun County Circuit Court had no jurisdiction to try him for the escape that occurred in Dallas County. The trial court denied the motion because appellant did not object to the court's jurisdiction prior to trial. While appellant frames his argument as a challenge to the sufficiency of the evidence, he did not move for a directed verdict on the escape charge. Clearly appellant's argument is one of jurisdiction because it challenges the trial court's power to hear a case. *State v. Osborn,* 345 Ark. 196, 45

S.W.3d 373 (2001). As such, the trial court's ruling in this respect was in error, because jurisdiction cannot be waived and can be raised at any time. *State v. Dawson,* 343 Ark. 683, 38 S.W.3d 319 (2001). Nonetheless, the trial court properly exercised jurisdiction over appellant's escape charge.

This case presents a question of local jurisdiction, that is where the offense is to be tried. *Osborn, supra.* Pursuant to Ark.Code Ann. § 16-88-105(b) (1987), "The local jurisdiction of circuit courts and justices' courts shall be of offenses committed within the respective counties in which they are held." Further, a circuit judge may act in a criminal case only when he is within the geographical area of the judicial district in which a charge is filed. *Waddle v. Sargent,* 313 Ark. 539, 855 S.W.2d 919 (1993). In short, this means that a circuit judge has no jurisdiction to try offenses that are not committed in that judge's county. *State v. Vaughan,* 343 Ark. 293, 33 S.W.3d 512 (2000). However, Arkansas law recognizes that some crimes are committed in more than one county. Ark.Code Ann. § 16-88-108(c) (1987) provides: "Where the offense is committed partly in one county and partly in another, or the acts, or effects thereof, requisite to the consummation of the offense occur in two (2) or more counties, the jurisdiction is in either county."

Appellant was charged with second-degree escape, which requires the use of physical force or the threat of physical force in escaping custody. Ark.Code Ann. § 5-54-111(a)(1) (Repl.1997) (the statute in effect when appellant escaped). A detailed recitation of the facts surrounding appellant's escape is not necessary. It is sufficient to note that he committed the offenses of aggravated robbery and three counts of kidnapping in Calhoun County and was apprehended the same day in Dallas County. He knocked down an officer and escaped, while still in Dallas County, as he was being transported back to Calhoun County by Calhoun County officers.

Appellant asserts that the offense of escape is completed the moment the suspect is out of custody and thus, is not a continuing offense. Because he was taken into custody in Dallas County and escaped in Dallas County, he maintains that Calhoun County lacked jurisdiction to try him for escape. The State concedes that Dallas County would have jurisdiction to try appellant for escape. However, it also counters that, pursuant to § 16-88-108(c), the Calhoun County Circuit Court had jurisdiction to try appellant for escape because the effects of his escape delayed for four months Calhoun County's ability to try him for the crimes he committed in that county.

We affirm pursuant to the Arkansas Supreme Court's interpretation of the "effects" clause of § 16-88-108(c) under *Osborn, supra.* In *Osborn,* a murder was committed in Franklin County and an investigation ensued; the suspect was interviewed in Crawford County and provided the police with false information. He was ultimately charged and convicted in Franklin County with hindering apprehension or prosecution. He appealed, arguing that the Franklin County Circuit Court lacked jurisdiction to try him.

Interpreting for the first time the effects clause of § 16-88-108(c), the *Osborn* court held that, although the act of providing false information occurred wholly in Crawford County, jurisdiction was proper in either Franklin or Crawford County. The court reasoned that the effects requisite to the consummation of the offense, *i.e.,* hindering the apprehension or prosecution of the three murder suspects,

13

> occurred in Franklin County, where the murder occurred and where the investigation was ongoing. The court further stated that were it not for the murder in Franklin County, Osborn would not have been interviewed by police and there would have been no investigation or prosecution for him to hinder.
>
> Here, had appellant not committed the crimes of aggravated robbery and kidnapping in Calhoun County, he would not have been placed into custody in Dallas County, he could not have escaped from that custody, and the prosecution in Calhoun County would not have been delayed. Thus, pursuant to *Osborn* and § 16-88-108(c), jurisdiction in this case was proper in either Calhoun County or Dallas County. Hence, we affirm appellant's conviction for second-degree escape.

*Avery v. State*, 93 Ark. App. 112 (2005).

While the attorney erred in several instances, this was a situation where the attorney had few viable options to pursue. While he could have filed a challenge to the jurisdiction prior to trial, the opinion of the Arkansas Court of Appeals leaves no doubt that this challenge was without merit. Likewise, the failure to abstract the directed verdict motion and to make the same argument on appeal did not change the ironclad evidence that Mr. Avery and his accomplice, Steve Richmond, held the victims at gunpoint, ushered them into a house, and took about $55. The testimony of Mr. Richmond, coupled with the identification testimony of the victims and their neighbors, was damning. In summary, we find the petitioner fails to demonstrate, under *Strickland v. Washington*, that he received ineffective assistance of counsel.

For his second claim for relief Mr. Avery urges that the evidence was insufficient to support the kidnapping convictions because the state failed to prove that the restraint used during the commission of the crimes exceeded that which was merely incidental to the aggravated robberies. The jury was instructed, without objection, that the state was required to prove Mr. Avery, without their consent, restrained the victims so as to substantially interfere with their liberty, and that he restrained them with the purpose of facilitating the commission of a felony. (Tr. 450). One of the victims, Robert Rosenbaum, testified that Mr. Avery pulled a gun while Rosenbaum was at Avery's car. Avery then directed Rosenbaum into Rosenbaum's house. Mr. Rosenbaum and his wife and grandchild were held there while Avery looked for and requested

money, eventually getting the small amount of money from Ms. Rosenbaum.  Mr. Rosenbaum stated he had no other option while Avery and Richmond had the victims in the house.  (Tr. 265).

Since this particular challenge was not made on direct appeal, there is no Arkansas appellate decision addressing this issue.  The issue, however, is frequently litigated in state court, and this passage, from *Tarpley v. State,* 2006 WL 3616403 (Ark. App.), aptly describes the law:,

> Appellant argues that his conviction of kidnapping should not stand because the State failed to show that he employed any greater restraint on the victim than that normally incident to the crimes of aggravated assault and terroristic threatening, of which he was also convicted. We do not agree. In Arkansas, it is only when the restraint exceeds that normally incidental to the associated crime that the defendant should also be subject to prosecution for kidnapping. *See Moore v. State,* 355 Ark. 657, 144 S.W.3d 260 (2004). Any additional restraint will support a conviction for kidnapping. *Id.* Factors considered in determining whether a separate kidnapping conviction is supportable include whether the movement or confinement (1) prevented the victim from summoning assistance; (2) lessened the defendant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm. *Id.* Here, the offense of terroristic threatening required no more than the communication of a threat-by word or deed-with the purpose of terrorizing the victim, *see Lowry v. State,* 364 Ark. 6, ___ S.W.3d ___ (2005), and the offense of aggravated assault was accomplished when appellant displayed the firearm and pointed it at the victim. *See* Ark.Code Ann. § 5-13-204(a)(2) (Repl.2006); *Harris v. State,* 72 Ark.App. 227, 35 S.W.3d 819 (2000). Given the testimony that appellant kept the doorway blocked for several minutes after performing these acts and that the victim was prevented from summoning assistance during this time, we hold that the evidence is sufficient to sustain the kidnapping conviction.

Given the testimony adduced at trial, the instructions used by the jury, and the applicable law, we find there was sufficient evidence to support the kidnapping convictions.

The third claim of Mr. Avery is that the trial court lacked jurisdiction over his escape charge.  This claim was addressed and dismissed on direct appeal, and the language from the Arkansas Court of Appeals has already been quoted herein.  When the state court has ruled on the merits of a petitioner's claims, a writ of habeas corpus may not be granted unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court."  28

U.S.C. § 2254(d)(1), (2).  The United States Supreme Court offers guidance in interpreting the statute:

> A state court decision will be "contrary to" our clearly established precedent if the state court either "applies a rule that contradicts the governing law set forth in our cases," or "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent."  A state court decision will be an "unreasonable application of" our clearly established precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."
> . . . Distinguishing between an unreasonable and an incorrect application of federal law, we clarified that even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable.

*Penry v. Johnson*, 532 U.S. 782, 792-93 (citations omitted).

Here, Mr. Avery does not offer or establish any reason to look beyond the ruling of the Arkansas Court of Appeals.  The third claim for relief is without merit.

The fourth and final claim is that the trial court erred in denying Mr. Avery's motion for a mental evaluation and his motion for a competency hearing.  This is essentially a due process challenge:

> In order to establish a denial of due process, the petitioner must prove that the asserted error was so gross, *Taylor v. Minnesota*, 466 F.2d 1119, 1121 (8th Cir. 1972), *cert. denied*, 410 U.S. 956 (1973), conspicuously prejudicial, *United States ex rel. Cannon v. Maroney*, 373 F.2d 908, 910 (3rd Cir. 1967), or otherwise of such magnitude that it fatally infected the trial and failed to afford the petitioner the fundamental fairness which is the essence of due process.  *Lisenba v. California*, 314 U.S. 219 (1941).  In making this determination, the courts must review the totality of the facts in the case pending before them and analyze the fairness of the particular trial under consideration.

*Maggitt v. Wyrick*, 533 F.2d 383 (8th Cir. 1976).

The state appellate court found no error in denying the petitioner's second request for a mental evaluation, and we concur in that finding.  In addition, we find no error in the trial court's handling of the motions for competency hearings.  Since we find no error, it follows that there is no error of constitutional dimensions.  This ground is without merit.

In summary, we have addressed the merits of the claims of Mr. Avery, and we find them without merit for the reasons stated herein. As a result, we recommend that the petition for writ of habeas corpus be dismissed and the relief requested be denied.

IT IS SO ORDERED this __15__ day of February, 2007.

_____
UNITED STATES MAGISTRATE JUDGE